IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM O. DALE;
A. JAMES STREELMAN,

      Plaintiffs,

    v.                                                 No. 1:18-cv-967-WJ-JHR
EQUINE SPORTS MEDICINE & SURGERY
RACE HORSE SERVICE, PLLC;
DR. BOYD CLEMENT,
Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON LIMITATIONS
## and
## DENYING PLAINTIFFS' MOTION FOR SANCTIONS UNDER RULE 11 AND §1927

THIS MATTER comes before the Court upon:

- Motion for Summary Judgment on Limitations, filed on June 25, 2019 by Defendants Equine Sports Medicine & Surgery Race Horse Service, PLLC ("ESMS") and Dr. Boyd Clement ("Dr. Clement") (collectively, "Defendants"). **Doc. 43**; and

- Plaintiffs' Motion for Imposition of Rule 11 Sanctions and/or Section 1927 Sanctions and to Strike Replies **(Doc. 62).**

Defendants seek dismissal of Plaintiffs' lawsuit on the grounds that it is not timely under applicable statutes of limitation. Plaintiffs seek sanctions based on Defendants' untimely filing of reply pleadings. Having reviewed the relevant pleadings of the parties and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted; and that Plaintiffs' motion for sanctions is not well-taken and, therefore, is denied.

## BACKGROUND

This case arises out of veterinary treatment of a racehorse, RawHide Canyon. Plaintiffs William O. Dale and A. James Streelman (collectively "Plaintiffs") allege that Defendants'

negligence and gross negligence in providing veterinary care for Plaintiffs' race horse Rawhide Canyon caused the horse to have severe trauma which ultimately resulted in death. Plaintiffs filed the original complaint in the United States District Court for the Northern District of Texas with subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. William O. Dale and A. James Streelman, owners of Rawhide Canyon, are domiciled in Missouri and California, respectively. ESMS is a licensed veterinarian clinic specializing in the medical care and treatment of racehorses and is domiciled in Texas, with an office located in Weatherford, Texas. Dr. Clement is a veterinarian employed by ESMS to practice veterinarian medicine in Texas and New Mexico and is domiciled in Albuquerque and, according to the complaint, he was "the ongoing treating physician for Rawhide Canyon . . . ." Compl., ¶27. The parties have stipulated that "[a]ll medical care and medical oversight of Rawhide Canyon provided from her arrival in New Mexico was primarily provided by Dr. Boyd Clement in New Mexico." Doc. 21 (Jt. Status Rep't, ¶53). The complaint alleges three counts:

> I – Veterinarian Malpractice
> II – Gross Negligence and
> III –Violation of the New Mexico Unfair Trade Practice Act, NMSA 1978 §57-12-1 et seq.

## I. History of Litigation

This case has a long and torturous procedural history, which the Court summarizes here for context.

On October 30, 2015, Mr. Dale filed a Complaint for Damages From Veterinary Malpractice/Negligence in the United States District Court for the Northern District of Texas, Fort Worth Division, Cause No. 4:15-cv-00825-A ("Texas case"). Mr. Streelman joined as a plaintiff on January 26, 2016.[1] In February, 2016, Plaintiffs moved to transfer venue to the United States

---

[1] Supporting documentation is contained in the parties' briefs.

District Court for the District of New Mexico, claiming that the District of New Mexico was more convenient for certain Defendants, but the motion was denied by the presiding judge in the Texas case, United States District Judge John McBryde. On May 20, 2016, having been unsuccessful in transferring venue to the District of New Mexico, Plaintiffs then attempted to obtain leave of court under Rule 41(a)(2) to dismiss the Texas case altogether in order to refile it in the District of New Mexico.

Judge McBryde denied the motion to dismiss on June 23, 2016. Plaintiffs then sought reconsideration, frankly explaining to the court that they hoped to find a jury more willing to award them greater damages:

> Plaintiffs prefer a venue with population of jurors who may have more familiarity with the full economic value of race horses and are generally known to be more inclined to award damages appropriate for the loss of opportunity that a race horse can yield.

Doc. 37-1 at 19. In their motion for reconsideration, Plaintiffs indicated their willingness to pay Defendants' reasonable attorneys' fees, but that negotiations had been unsuccessful. Judge McBryde nevertheless denied Plaintiffs' motion to reconsider on April 25, 2017. *Dale v. Equine Sports Med. & Surgery Race Horse Serv.*, PLLC, 4:15-CV-825-A, 2017 WL 1498030, at *3-*4 (N.D. Tex. Apr. 25, 2017).

Plaintiffs had also filed an earlier and almost identical lawsuit in the United States District Court for the District of New Mexico, making no disclosure regarding this "duplicate action" to Judge McBryde, who opined in an unpublished opinion that the filing of that action "was a part of a plan by the plaintiffs to avoid a trial in this court and to shift venue to the federal court in New Mexico." *Dale v. Equine Sports Med. & Surgery Race Horse Serv., PLLC*, No. 4:15-CV-825-A,

2017 WL 1498030, at *1 (N.D. Tex. Apr. 25, 2017). Plaintiffs voluntarily dismissed this first New Mexico case by Notice under Rule 41(a)(1)(A)(i) without prejudice, on January 10, 2017.

The Texas case went to trial on December 12, 2016 and ended in a mistrial on Defendants' motion after a witness for Plaintiffs testified about settlement negotiations between the parties, although Plaintiffs' counsel had been ordered not to offer such evidence. *Dale v. Equine Sports Med. & Surgery Race Horse Serv., P.L.L.C.*, 750 F. App'x 265, 267 (5th Cir., Sept. 10, 2018).[2] After an acrimonious post-trial period with both sides seeking sanctions, Judge McBryde reset the matter for trial, but Plaintiffs gave notice that they would not appear for the reset trial. When Plaintiffs refused to appear for trial in that case and would not prove to Judge McBryde's satisfaction the basis for Plaintiffs' refusal to appear for re-trial, Judge McBryde dismissed the case with prejudice for failure to prosecute under Rule 41 and entered judgment in Defendants' favor.

Plaintiffs appealed Judge McBryde's rulings to the Fifth Circuit Court of Appeals, raising numerous issues. The Fifth Circuit held that the district court did not abuse its discretion in in denying Plaintiffs' motion to transfer venue, but found that the district court had abused its discretion in refusing to reconsider its denial of Plaintiffs' motions for voluntary dismissal and reconsideration, finding that the district court should have granted the motion to reconsider when Plaintiffs made clear that they would pay Defendants' reasonable attorneys' fees. 750 F. App'x at 268-69. The case was remanded to the district court with instructions to dismiss Plaintiffs' case without prejudice. *Id.* The final result was that Plaintiffs' Motion to Dismiss was finally granted, and Plaintiffs re-filed the case here in the District of New Mexico.

---

[2] Details of post-mistrial events and motions are chronicled in an unpublished decision by Judge McBryde and provide interesting reading but are not relevant to the Court's decision. *See* 2017 WL 1498030 at *4 (N.D. Tex. Apr. 25, 2017).

**II. Relevant Facts**

The facts in Plaintiffs' complaint offer no information pertinent to a limitations argument. The complaint includes dates of races run by RawHide Canyon, *see* Doc. 1, ¶¶11-21, but omits dates corresponding to any veterinary treatment until the horse's death in October of 2014, ¶¶24-47. The complaint also contains almost no information pertaining to where the treatment was given and so there is no way to know which allegations pertain to the two Defendants in this case. *See* ¶¶34-47. The Joint Status Report (Doc. 21, "JSR") offers nothing more. Plaintiffs list 437 "contentions" filling 44 pages of the Joint Status Report, and these contentions are also devoid of specific treatment locations and dates for those facts related to veterinary treatment. The Fifth Circuit provided a cogent, succinct description of the case as follows:

> Plaintiffs purchased Rawhide Canyon for $19,000. During the next racing season, Rawhide Canyon sustained an injury that created bone chips in one of her joints. Following a surgery to remove the bone chips, Rawhide Canyon was transported to New Mexico for rehabilitation. There, Dr. Boyd Clement, an employee of Equine Sports Medicine and Surgery Race Horse Service, PLLC ("ESMS"), was Rawhide Canyon's ongoing treating veterinarian.
>
> A year later, Rawhide Canyon developed an infection in the joint that had been the subject of the surgery. Dr. Clement, along with other ESMS employees, continued to treat Rawhide Canyon for that infection. Later, Rawhide Canyon was transferred to an ESMS facility in Weatherford, Texas. By then, Rawhide Canyon's condition had significantly deteriorated, and she was eventually euthanized.

*Dale v. Equine Sports Med. & Surgery Race Horse Serv., P.L.L.C.*, 750 F. App'x 265, 266–67 (5th Cir. 2018).

The only operative facts provided by the parties which the Court finds relevant to the limitations issue are the stipulations listed in the Joint Status Report (Doc. 21):

- On June 1, 2014, Dr. Clement injected Rawhide Canyon's right radiocarpal and intercarpal joints.

- Dr. Ivey injected the right front joint of Rawhide Canyon on June 20, 2014.

- Dr. David Ramey opines that Rawhide Canyon developed a joint infection after the June 20, 2014 injection given by Dr. Ivey. The injection performed by Dr. Ivey on June 20, 2014 contained Amikacin.

- On June 27, 2014, ESMS records indicate that X-rays were taken, and more joint injections were given. On July 6, 2014, five radiographs were taken of Rawhide Canyon's joint.

- On August 4, 2014 Dr. Clement preformed antibiotic injections and "complete fluid analysis" of the joint fluid at ESMS, and joint fluid samples were sent to Texas Veterinary Medical Laboratory. The joint fluid sample had a high white blood cell count, suggestive but not conclusive of a diagnosis of infection.

- A blood analysis was also performed. These results indicated a high white blood cell count.

- On August 5, 2014, Rawhide Canyon was treated by Dr. Collin Howard, also with ESMS. Treatment was apparently on site in New Mexico which included regional limb perfusion, standing joint lavage with 1 liter of fluid, and a course of antibiotics (penicillin and gentamycin).

- On August 9, 2014, Rawhide Canyon was treated with an additional intraarticular injection of amikacin and dexamethasone sodium phosphate. The horse was also injected with an ultra-short acting corticosteroid, dexamethasone sodium phosphate, combined with sodium hyaluronate and amikacin (antibiotic).

- Dr. Clement began treating Rawhide Canyon for a septic joint infection 23 days after a PPG injection which was performed on August 4, 2014.

- Rawhide Canyon was moved to Missouri on or about September 2, 2014, to Mr. Dale's farm.

- While in Missouri, Rawhide Canyon was not seen by any veterinarians.

- No medical providers in Missouri provided care to Rawhide Canyon.

- Rawhide Canyon was not seen by ESMS again until September 21, 2014.

- Rawhide Canyon remained at Mr. Dale's farm until being transported to the ESMS facility in Weatherford, Texas where she was admitted on September 21, 2014.

- Two regional limb perfusions are performed by Dr. Ty Tipton at ESMS in Texas, on September 21 and September 23, 2014. No antibiotics were given.

- On October 21, 2014, Rawhide Canyon was euthanized.

Doc. 21, ¶¶56-77.

Plaintiffs contend that Rawhide Canyon's physical condition deteriorated significantly within days of the hyaluronic injection administered by Dr. Ivey on June 20, 2014 and that Rawhide Canyon continued to deteriorate even further over the six-week post-injection period.[3] They claim that Rawhide Canyon's trainer, John Stinebaugh, believed that Dr. Clement failed to recognize the infection and that despite the horse's deteriorating condition, he refused to treat Rawhide Canyon for infection. According to Plaintiffs, Dr. Clement stated he would bet Stinebaugh a "steak dinner" that the horse did not have an infection. After "extended months of not investigating for infection" (*see* Doc. 21, JSR, ¶56), Dr. Clement finally prescribed blood tests and treatment was finally begun approximately two months after Rawhide Canyon first showed signs of infection. Within a few days of being moved to Missouri, however, Rawhide Canyon's condition again deteriorated. Her knee was extremely swollen, and she appeared very ill. Plaintiff Dale contacted ESMS about Rawhide Canyon's deteriorating condition and ESMS employees recommended that he bring the horse to their clinic in Weatherford, Texas, and the horse was taken there on September 21, 2014.

There is evidence that by the time Plaintiff Dale took Rawhide Canyon to Missouri on September 2, 2014, he was not optimistic about the horse's chances of survival. Ex. D (Dale Depo.) at 128:5-17 (stating that he "wouldn't have given her a one-percent chance of ever recovering."); 42-43:24 (stating that it "was just too late. That joint had so disintegrated that there was nothing left to do."). Rawhide Canyon received no veterinary care at all after she was admitted to the ESMS clinic on September 21, 2014. Rawhide Canyon was euthanized a month later.

## II. Legal Standard

---

[3] Parties stipulate that Plaintiffs' expert Dr. Ramey, believes the infection began after the June 20 injections.

7

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Biester v. Midwest Health Servs., Inc.,* 77 F.3d 1264, 1265 (10th Cir.1996). The issue here is whether Plaintiffs' claims are untimely; thus, if the statute of limitations depends on disputed material facts, then summary judgment is inappropriate. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citing *Wolf v. Preferred Risk Life Ins. Co.,* 728 F.2d 1304, 1306–07 (10th Cir.1984)).

The facts and pertinent dates are not in dispute here and so the Court determines whether as a matter of law, Plaintiffs' claims were brought in a timely manner.

## DISCUSSION

Defendants seek dismissal of Plaintiff's lawsuit on the grounds that it is not timely under relevant statutes of limitation.

### I.     Choice of Law: New Mexico Law Applies

Defendants contend that the first inquiry is whether to apply Texas or New Mexico substantive law to Plaintiffs' claims. In a diversity action, the federal courts are required to apply the law of the forum state, including its choice-of-law principles, to determine the substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Barrett v. Tallon,* 30 F.3d 1296, 1300 (10th Cir.1994). Plaintiffs have alleged claims of veterinary malpractice and negligence, which are tort claims. *See Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir. 1985) (state law barring an action because of a statute of limitations is sufficiently "substantive" enough in the Erie sense, so that a federal court exercising diversity jurisdiction must respect it).

Following the choice-of-law rules of New Mexico as the forum state, if the underlying claim is categorized as a tort, then the substantive rights of the parties are governed by the law of

the place where the wrong occurred under the doctrine of *lex loci delicti commissi*. *Terrazas v. Garland & Loman, Inc.*, 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct.App.2006). The *lex loci delicti* rule defines the state where the wrong occurred as "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Id*. Defendants posit that whether Texas or New Mexico statutes of limitations applies depends on what the last event is giving rise to Plaintiffs' cause of action. Defendants contend that if that "last event" is the ultimate death of the horse, then Texas law applies to Plaintiffs' claims because the horse was euthanized in Texas on October 21, 2014. However, if the "last event" is the realization that damage to the horse was almost certainly a total loss as a result of treatment received in New Mexico—which happened by either September 2nd or 21st, 2014, then New Mexico law applies to Plaintiffs' claims.

In their response, Plaintiffs clarify that they are not relying on the euthanizing of the horse as the substantive event giving rise to this cause of action. Plaintiffs do not concede that Rawhide Canyon's death "was of no consequence," noting that even the slightest chance that the horse could have recovered would have potentially eliminated the need to file this lawsuit. Doc. 53 at 2, n.2. However, Plaintiffs adhere to the position that New Mexico law, and not Texas law, applies to their claims, including the statutes of limitations:

> **Thus, if New Mexico law applies, by the admission of Defendants, the earliest date this statute of limitations began to accrue was September 2, 2014. The four-year statute of limitations thus places the deadline on September 2, 2018.**

Doc. 53 at 2 (emphasis added).

## II.   Federal Lawsuit is Untimely Under New Mexico Statute of Limitations

Under New Mexico law, injury to personal property carries a four year statute of limitations. Actions "brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and

9

specified within four years." NMSA 1978 § 37-1-4.[4] Thus, this federal lawsuit (which was filed October 18, 2018) is untimely by over six weeks since it should have been filed by September 2, 2018 when Plaintiffs were first aware they had a potential claim against Defendants. Moreover, even if Plaintiffs were not aware of the degree of the horse's condition until September 21, 2014 (when Rawhide Canyon was admitted to ESMS), the lawsuit would still be untimely by over 3 weeks.

## III.    Tolling Does Not Apply

Plaintiffs do not dispute the applicability of the four-year limitations period for their claims and acknowledge that their claims against Defendants are untimely under New Mexico's statute of limitations. However, they contend that tolling applies to extend the deadline for filing suit, relying on New Mexico's savings statute, NMSA 1978, §37-1-14:

> If, after the commencement of an action, **the plaintiff fails therein for any cause, except negligence in its prosecution,** and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

NMSA §37-1-14 (emphasis added). Plaintiffs argue that this lawsuit is timely under this savings statute. The Fifth Circuit found that Judge McBryde committed reversible error in denying Plaintiffs' Rule 41 motion to dismiss the Texas action and re-file in New Mexico. Since that decision was issued on September 10, 2018, the deadline to re-file was six months later on March 10, 2019—making the October 18, 2018 re-filing timely.

Plaintiffs' argument succeeds only if the New Mexico savings statute applies since the significant date is the "failure" of the first case, which Plaintiffs contend is the date the Fifth Circuit reversed Judge McBryde's denial of Plaintiffs' motion to dismiss.[5] If the savings statute is not

---

[4] Household pets are "deemed and considered personal property." N.M. Stat. Ann. § 77-1-1.
[5] The more accurate date for Plaintiffs' purposes would have probably been October 2, 2018—the date the Texas case was dismissed without prejudice following remand from the Fifth Circuit. *See Dale v. Equine Sports Med. &*

10

available to Plaintiffs, then the interruption of the Texas case is considered as never having occurred. The relevant dates would then be the dates Plaintiffs first discovered they had a claim against Defendants, September 2, 2014 and September 21, 2014 and this federal lawsuit is untimely.

The Court agrees with Defendants that Plaintiffs cannot rely on the New Mexico savings statute, for several reasons. First, Plaintiffs insist they are entitled to tolling under the statute because "the Fifth Circuit acknowledged" in oral argument that tolling would apply if it reversed Judge McBryde's denial of Plaintiffs' request for dismissal. Comments or dicta made in oral argument are insufficient as a basis to find that tolling applies.[6]

Second, the savings statute does not apply because Plaintiffs did not "fail" in their Texas lawsuit. Plaintiffs contend their Texas suit "failed" as a result of the reversed error of Judge McBryde (Doc. 53 at 3) and because Judge McBryde ultimately dismissed the case without prejudice following remand from the Fifth Circuit (Doc. 53 at 2). This argument is contrary to the express language of the savings statute which envisions that an action commences, and then "fails"—resulting in a termination of the case. Plaintiffs attempt to hitch a ride on Judge McBryde's erroneous ruling as the reason for the case's "failure," but that error was corrected by the Fifth Circuit. Thus, under the language of the savings statute, one need not look beyond Plaintiffs' own request to voluntarily abandon the Texas case in order to re-file in a state with a potentially more generous jury pool.

---

*Surgery Race Horse Serv., PLLC,* 4:15-cv-00825-A Doc. 164. Under Plaintiffs' theory, April 2, 2019 would then have been the deadline for re-filing.

[6] Defendants counter that the tolling comment during oral argument was made in the context of Plaintiffs' request that the matter be sent back to the Northern District of Texas, but to a different judge.

Third, while Plaintiffs were not found to be negligent in their prosecution of the Texas lawsuit, a voluntary dismissal under Rule 41(b) poses the same policy concerns under the savings statute. In *King v. Lujan*, the New Mexico Supreme Court noted that:

> [h]olding that a Rule 41(b) dismissal without prejudice tolls the statute for the time the case was pending could conceivably extend the time for bringing suit indefinitely; the plaintiff could continuously refile but never act to bring the case to its conclusion.

*King v. Lujan*, 98 N.M. 179, 181 (1982). The Supreme Court therefore adopted the view that:

> . . . even though the filing of a suit ordinarily tolls the applicable limitations period, when an action is dismissed without prejudice because of a failure to prosecute, the interruption is considered as never having occurred.

*Id.* There is the same potential for continuous re-filing when plaintiffs repeatedly search for a better forum or venue, or for a better jury pool as Plaintiffs tried to do here. The Court therefore finds that Plaintiffs' request for voluntary dismissal under Rule 41(b) is not a "failure" of the case under New Mexico's savings statute and further, while Plaintiffs were not negligent in their prosecution of the Texas case, the savings statute would not apply for the same policy reasons. If the "interruption" of the Texas case is considered as never having occurred, then Plaintiffs' re-filing of this lawsuit here is untimely and Plaintiffs' claims are barred by New Mexico's statute of limitations.

Plaintiffs offer no legal authority in New Mexico or even in this circuit which would persuade the Court to consider their voluntary dismissal as a "failure" under the savings statute, and the Court has not unearthed any, either. The Court did find an Eighth Circuit case which considered the issue in a diversity case that was filed in Missouri state court and removed to federal court. *Davis v. Liberty Mut. Ins. Co.*, 55 F.3d 1365 (8th Cir. 1995). Plaintiff in that case was a truck driver who lived in Missouri and was injured in Iowa in the course of his employment. He

and his wife sued the workers' compensation insurer, the claims adjuster, the orthopedic surgeon who conducted an independent medical examination and the orthopedic clinic.

After learning at a hearing that the judge was inclined to grant a motion to dismiss in favor of the insurer and claims adjuster, plaintiffs filed a voluntary dismissal of their claims. They then settled their claims against the doctor and the clinic and refiled their complaint against the insurer and claims adjuster in Missouri state court. Defendants removed the case to federal court. The district judge held that Missouri choice of law required the taking of Iowa's savings statute along with its statute of limitations and that a voluntary dismissal without prejudice would not permit the savings statute to operate. That savings statute contains language similar to the New Mexico savings statute, providing for a six-month saving period if an action "[fails] for any cause except negligence in its prosecution." Iowa Code §614.10. The district court held that the voluntary dismissal of plaintiffs' first complaint was not a dismissal under any "compulsion" and therefore did not constitute a "failure" which would allow the statute to operate.

The Eighth Circuit Court of Appeals disagreed and reversed the judgment, finding that plaintiffs' dismissal was the type of "failure" which permitted application of the Iowa savings statute. 55 F.3d 1365. The court of appeals acknowledged that Iowa law tolerates, and "perhaps even encourages" refiling for a proper purpose. *Id.* at 1369. It also noted that the reason behind plaintiffs' dismissal was to facilitate settlement with two of the defendants and that Iowa precedent encourages such settlements and favors dismissal and refiling rather than taking an appeal.

The Court includes *Davis* in its discussion here because it appears that the application of a savings statute relies significantly on the particular circumstances of a case, including the motivation behind a plaintiff's request for dismissal and whether it is done in good faith. For example, in a New Mexico case, *Foster v. Sun Healthcare Grp., Inc.*, defendants asserted that

13

plaintiff's case was dismissed "due to negligence in prosecution" because prior to filing the federal court case, plaintiff had admitted knowledge of the facts that destroyed diversity. 2012-NMCA-072, ¶ 5, 284 P.3d 389, 392–93. However, the New Mexico Court of Appeals concluded that the savings statute nevertheless applied and found that plaintiff had filed the federal action in good faith because the information regarding defendants' locations "did seem confusing." *Id.*

The circumstances in this case do not persuade the Court that Plaintiffs' Texas case "failed" under the New Mexico savings statute. Plaintiffs in this case have been crystal clear about their reasons behind the dismissal, which was motivated for purely economic reasons; and when that request for dismissal was denied, they proceeded to engage in conduct before the Texas district court that was considerably short of good faith. Details of post-mistrial events and motions are chronicled in an unpublished decision by Judge McBryde, including plaintiffs' various excuses about why they could not attend the various trial dates set by Judge McBryde and their outright refusal to comply with the final trial setting order. *See Dale v. Equine Sports Med. & Surgery Race Horse Serv., PLLC*, No. 4:15-CV-825-A, 2017 WL 1498030, at *2 (N.D. Tex. Apr. 25, 2017).

Accordingly, based on the foregoing reasons, the New Mexico savings statute does not operate to "save" Plaintiffs' refiling of this lawsuit in New Mexico federal court.

## IV. Plaintiffs' Motion for Imposition of Rule 11 Sanctions and/or Section 1927 Sanctions and to Strike Replies (Doc. 62)

Just prior to the Court's filing of this opinion, Plaintiffs filed a Motion for sanctions seeking to strike Defendants' untimely replies. See Doc. 62. Given the Court's disposition of this motion, no response is necessary. The Court finds Plaintiffs' motion not relevant to the Court's rulings and the motion is denied for several reasons:

(1) Defendants' reply to the instant motion does not appear to be one of the offending briefs in Plaintiffs' motion, see Doc. 62 at 4 (listing deadlines "ignored" by Defendants);

14

(2) Plaintiffs' counsel, Mr. Blair Dunn, had notice as of September 17, 2019 that Defendants would be filing replies to issues raised in Plaintiffs' responses that same week, which they did three days later on September 20th. That notice was given to Plaintiffs' counsel by way of an e-mail sent by defense counsel on September 17, 2019 in response to Magistrate Judge Ritter's inquiry to the parties about filing dates for replies as well as whether a settlement conference was desired. Defense counsel advised Judge Ritter in that e-mail that they would file replies within a few days. While Mr. Dunn was copied on all of these e-mails, he did not respond to Judge Ritter's e-mail nor did he make any comment about defense counsel's intention to file the replies that week. Instead, Plaintiffs' counsel chose to sit on the matter for over a month before filing the motion for Rule 11 sanctions. The Court finds that in failing to respond at all to the issue when it was raised by Judge Ritter or responded to by defense counsel, Plaintiffs' counsel effectively acquiesced in the filing extension and has now waived any objections he has to Defendants' untimely filing of replies; and

(3) Defendants' reply on the limitations issue is not critical to the Court's analysis and final rulings. The issue comes down to whether Plaintiffs are entitled to the benefits of the New Mexico savings statute, and the Court has determined that they are not as a matter of law. Therefore, the Court will denies Plaintiffs' request for sanctions under either Rule 11 or §1927. for untimely filings of replies for these above-stated reasons.

**THEREFORE,**

**IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment on Limitations (**Doc. 43**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order; and

(2) Plaintiffs' Motion for Imposition of Rule 11 Sanctions and/or Section 1927 Sanctions and to Strike Replies **(Doc. 62)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE